## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GORDMANS STORES, INC., *et al.*,[1] | ) | Case No. 17-80304 (TLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) ESTABLISHING BIDDING PROCEDURES AND GRANTING RELATED RELIEF AND (II) APPROVING THE BID PROTECTIONS RELATED TO THE DISPOSITION OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Bidding Procedures Order"):   (a) approving the bidding procedures attached as **Schedule 1** to this Bidding Procedures Order (the "Bidding Procedures"), by which the Debtors will, in consultation with the Consultation Parties, solicit and select the highest or otherwise best offer for the sale, liquidation, or other disposition of all or substantially all of their assets (the "Transaction"); (b) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreement described herein and attached hereto; (c) approving the Debtors' selection of a joint venture comprising Tiger Capital Group, LLC and Great American Group, LLC as the  stalking horse agent (the "Stalking Horse Agent"), the Bid Protections (as defined in the Bid Procedures attached hereto) for the Stalking Horse Agent, and that certain agreement (the

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Gordmans Stores, Inc. (1987); Gordmans, Inc. (1211); Gordmans Management Company, Inc. (65281); Gordmans Distribution Company, Inc. (5421); Gordmans Intermediate Holdings Corp. (9938); and Gordmans LLC (1987).  The location of the debtors' service address is:  1926 South 67th Street, Omaha, Nebraska, 68106.

[2]   Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion (Docket No. 24) or the Bidding Procedures, as applicable.

"Stalking Horse Agency Agreement") among the Debtors and the Stalking Horse Agent; (d) scheduling a final hearing (the "Transaction Hearing") to approve the Transaction; and (e) granting related relief, and upon the Debtors' further request that, at the Transaction Hearing, this Court enter an order (a "Transaction Order"), a proposed form of which will be filed before the Transaction Hearing, (x) authorizing the sale, liquidation, or other disposition of all or substantially all of the Debtors' assets free and clear of liens, claims, interests, and encumbrances (collectively, the "Interests") with any such Interests to attach to the proceeds thereof with the same validity and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the Transaction; (y) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (z) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

KE 45963752.20

A.     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014, and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Nebraska (the "Local Rules").  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

D.     Notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Nebraska (the "U.S. Trustee"); (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the administrative agent under the Debtors' prepetition secured credit facility and term loan; (iv) counsel to the Debtors' administrative agent, Riemer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven Fox (SFox@riemerlaw.com) and

3

Donald E. Rothman (Drothman@riemerlaw.com) and Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf (wolfje@gtlaw.com); (vii) the United States Attorney's Office for the District of Nebraska; (viii) all taxing authorities having jurisdiction over any of the assets, including the Internal Revenue Service; (ix) the United States Securities and Exchange Commission; (x) counsel to the Stalking Horse Agent, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Scott K. Charles and Neil M. Snyder, (skcharles@wlrk.com), (nmsnyder@wlrk.com); (xi) all parties who have expressed a written interest in some or all of the assets; (xii) all entities known to have or to have asserted any lien, claim, interest, or encumbrance in or upon any of the assets; (xiii) all parties on the Rule 2002 Notice list; (xiv) counsel to the unsecured creditors' committee, Frost Brown Todd LLC, 301 East Fourth Street, Cincinnati, Ohio 45202, Attn: Ronald E. Gold (rgold@fbtlaw.com) and Douglas L. Lutz (dlutz@fbtlaw.com), and Koley Jessen P.C., L.L.O., One Pacific Place, 1125 South 103rd Street, Suite 800, Omaha, Nebraska 68124, Attn: Brian J. Koenig (brian.koenig@koleyjessen.com); (xv) each landlord of any of the Debtors' retail locations, distribution centers or corporate offices; (xvi) the office of the attorney general in each state in which any of the assets and/or any of the Debtors' retail locations, distribution centers or corporate offices are located; and (xvii) each governmental agency that is an interested party with respect to the Transaction and transactions proposed thereunder. Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation: (i) approval of the Bidding Procedures; (ii) approval of the selection of a joint venture comprising Great American Group, LLC and Tiger Capital Group, LLC as the Stalking Horse Agent; (iii) approval

of the Bid Protections; (iv) approval of the Assumption and Assignment Procedures; (v) approval of the form and manner of notice of all procedures, protections, schedules, and agreement described in the Motion and attached thereto; (vi) the scheduling of a date for the Transaction Hearing; and (vii) all related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      Entry into the Stalking Horse Agency Agreement with the Stalking Horse Agent, which Stalking Horse Agency Agreement is attached as Exhibit C to the Motion and is incorporated herein by this reference as if fully set forth in this Bidding Procedures Order, is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.[3]  The Stalking Horse Agency Agreement provides the Debtors with the opportunity to sell, liquidate, or engage in some other type of disposition regarding all or substantially all of their assets in order to preserve and realize their optimal value.

G.      The Bidding Procedures, incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.  The Bid Protections:  (i) shall, if triggered, be an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code in accordance with the Stalking Horse Agency Agreement; (ii) are commensurate to the real and substantial benefit

---

[3]    The Bidding Procedures and the Bid Protections set forth in the Motion and Stalking Horse Agency Agreement have been modified by agreement of the parties.  To the extent there are any conflicts between any specific terms of this Bidding Procedures Order and any specific terms of the Stalking Horse Agency Agreement or the Motion, the terms of this Bidding Procedures Order shall govern.

KE 45963752.20

conferred upon the Debtors' estates by the Stalking Horse Agent; (iii) are reasonable and appropriate, including in light of the size and nature of the Transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Agent, notwithstanding that the Transaction is subject to higher or better offers; and (iv) were necessary for the Stalking Horse Agent to pursue the Transaction and to be bound by the Stalking Horse Agency Agreement.

H.      The Bidding Procedures and the Bid Protections were a material inducement to, and express condition of, the willingness of the Stalking Horse Agent to submit a bid through execution of the Stalking Horse Agency Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.

I.      The Bidding Procedures and the Stalking Horse Agency Agreement (including, without limitation, the Bid Protections) were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Agent.

J.      The Assumption and Assignment Notice, substantially in the form attached hereto as **Schedule 2** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the applicable Designated Contracts in connection with the Transaction and the related Cure Costs, and no other or further notice is required.  The Motion, this Bidding Procedures Order, and the Assumption and Assignment Procedures set forth herein are reasonably calculated to provide counterparties to any executory contracts or unexpired leases to be assumed and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Designated Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

KE 45963752.20

K.      The Transaction Notice, substantially in the form attached to the Motion as **Exhibit D**, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Transaction and entry of the Transaction Order, and the date, time, and place of the Transaction Hearing; (iv) reasonably specific identification of the assets to be sold; (v) instructions for promptly obtaining copies of the Stalking Horse Agency Agreement; (vi) a description of the Transaction as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Transaction Order and Stalking Horse Agency Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Transaction proceeds; and (vii) notice of the proposed assumption and assignment of Designated Contracts to the Stalking Horse Agent pursuant to the Stalking Horse Agency Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Transaction shall be required.

L.      The Post-Auction Notice, substantially in the form attached to the Motion as **Exhibit E** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder, and no other or further notice is required.

M.      The Debtors' prepetition marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders, subject to the Committee's reservation of rights expressed on the record at the Bidding Procedures Hearing.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.[4]

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.      Timeline for the Transaction**

3.      The Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Agency Agreement, that are intended to be performed prior to the Transaction Hearing or entry of the Transaction Order.   The Debtors are authorized to proceed with the Transaction in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Action | Deadline |
|---|---|
| Bid Deadline | Tuesday, March 28, 2017 at 4:00 p.m. (prevailing Central Time) as the deadline by which bids for the assets (as well as all other documentation required under the Bidding Procedures for Potential Bidders (as defined in the Bidding Procedures)) must be actually received (the "Bid Deadline"). |
| Cure Objection Deadline | Tuesday, March 28, 2017 at 11:59 p.m. (prevailing Central Time) as the deadline to file and serve any Designated Contract Objection objecting to the proposed Cure Costs for a Designated Contract. |

---

[4]    Notwithstanding anything to the contrary herein, the consummation of the Transaction is subject to entry of the Transaction Order.

KE 45963752.20

| Action | Deadline |
|---|---|
| Auction | Wednesday, March 29, 2017 at 10:00 a.m. (prevailing Central Time), if needed, will be held at the offices of Kutak Rock LLP, located at 1650 Farnam Street, Omaha, Nebraska 68102, (or at any other location as the Debtors may hereafter designate on proper notice). |
| Assumption and Assignment Objection Deadline | Tuesday, April 4, 2017 at 4:00 p.m. (prevailing Central Time) as the deadline to file and serve any Designated Contract Objection objecting to the assumption and assignment of any Designated Contract on grounds other than the proposed Cure Costs. |
| **If the prevailing bid either provides for the liquidation of all or substantially all of the Debtors' assets, or a component of a prevailing joint bid that provides for the liquidation of some of the Debtors' assets:** | |
| Transaction Objection Deadline | Thursday, March 30, 2017 at 1:00 p.m. (prevailing Central Time) as the deadline to object to the Transaction (at the start of the Transaction Hearing). |
| Reply Deadline | Thursday, March 30, 2017 at 1:00 p.m. (prevailing Central Time) as the deadline to reply to the Transaction Objections (at the Transaction Hearing). |
| Transaction Hearing | Thursday, March 30, 2017 at 1:00 p.m. (prevailing Central Time). |
| **If the prevailing bid either provides for the sale of all or substantially all of the Debtors' assets in a going-concern transaction, or a component of a prevailing joint bid provides for the sale of some of the Debtors' assets in a going-concern transaction:** | |
| Status Conference Hearing | Thursday, March 30, 2017 at 1:00 p.m. (prevailing Central Time). |
| Transaction Objection Deadline | Tuesday, April 4, 2017 at 4:00 p.m. (prevailing Central Time) as the deadline to object to the Transaction. |
| Reply Deadline | Wednesday, April 5, 2017 at 1:00 p.m. (prevailing Central Time) as the deadline to reply to the Transaction Objections (at the Transaction Hearing). |

9

| Action | Deadline |
|---|---|
| Transaction Hearing | Wednesday, April 5, 2017 at 1:00 p.m. (prevailing Central Time). |

4.     For the avoidance of doubt, the Debtors reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures in accordance with the provisions of the Bidding Procedures, in consultation with the Consultation Parties and the Stalking Horse Agent, subject to the terms of the Stalking Horse Agency Agreement.

## II.     The Bidding Procedures

5.     The Bidding Procedures are approved in their entirety.    The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith and the Stalking Horse Agency Agreement.   The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

6.     The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be 4:00 p.m. (prevailing Central Time) on March 28, 2017. Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Transaction Hearing as set forth herein.

7.     The Stalking Horse Agent is deemed a Qualified Bidder, and the Stalking Horse Bid as set forth in the Stalking Horse Agency Agreement is deemed a Qualified Bid.

8.     The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.   The Auction shall take place at 10:00 a.m. (prevailing Central Time) on

10

March 29, 2017 at the offices of one of the co-counsels for the Debtors, Kutak Rock LLP, located at 1650 Farnam Street, Omaha, Nebraska 68102 (or at any other location as the Debtors may hereafter designate on proper notice).

9.      Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of the value of their allowed secured claims pursuant to Bankruptcy Code section 363(k) or other applicable law (provided that a Secured Creditor shall have the right to credit bid all or a portion of the value of its secured claim to the extent such secured claim is not disputed), and any such credit bid shall be deemed a Qualified Bid, and any such secured creditor a Qualified Bidder, for all purposes hereof.  Credit bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Agent's entitlement to the Bid Protections and, for the avoidance of doubt, any such credit bid shall be required to provide for payment in cash of the Bid Protections.

10.     The Debtors shall file notice on the docket of these chapter 11 cases of the results of the Auction as soon as reasonably practicable after the close of the Auction.

## III.   Stalking Horse Agent, Bid Protections, and Stalking Horse Agency Agreement

11.     The Debtors are authorized to enter into the Stalking Horse Agency Agreement, subject to higher or otherwise better offers at the Auction. The Bid Protections and the terms of Section 16 of the Stalking Horse Agency Agreement, as modified by this Bidding Procedures Order, are approved in their entirety and shall survive the termination of the Stalking Horse Agency Agreement.  The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Agent on account of the Stalking Horse Agent's Bid Protections in accordance with the terms of the Stalking Horse Agency Agreement, as modified by this Bidding Procedures Order.  The Bid Protections, to the extent payable in accordance with the terms of the Stalking Horse Agency Agreement, as modified by this Bidding Procedures Order, are allowed

11

administrative expenses in these chapter 11 cases pursuant to section 503(b)(1) and 507(a)(2) of the Bankruptcy Code, senior to all other administrative expense priority claims in these chapter 11 cases, and are secured by legal, valid and binding first-priority liens on, to the extent of the Debtors' interest therein, any cash deposit, if any, paid by any bidder for an Alternative Transaction (as defined in the Stalking Horse Agency Agreement) and the proceeds of any Alternative Transaction (which liens are senior to any lien or security interest in favor of the administrative agent or any lender under the Debtors' prepetition secured credit facility and term loan and are hereby deemed properly perfected without the need for further filings or documentation of any kind), in each case in accordance with the terms of the Stalking Horse Agency Agreement, as modified by this Bidding Procedures Order.

## IV.    Notice Procedures

12.    The form of Transaction Notice substantially in the form attached to the Motion as **Exhibit D** (the "Transaction Notice") is approved.

*A.    Notice of Transaction, Auction, and Transaction Hearing.*

13.    Within 24 hours after the entry of this Bidding Procedures Order, or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtors shall serve the Transaction Notice, Stalking Horse Agency Agreement, Bidding Procedures Order, and Bidding Procedures by overnight mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon (a) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the assets within the past two years; (b) all entities known to have or to have asserted any lien, claim, interest, or encumbrance in or upon any of the assets; (c) counsel for the administrative agent, Riemer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven Fox and Donald E. Rothman, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn:

12

Jeffrey M. Wolf, and Croker Huck Kasher DeWitt Anderson & Gonderinger, L.L.C., 2120 South

72nd Street, Suite 1200, Omaha, Nebraska 68124, Attn:  Robert Gonderinger; (d) counsel to the

Stalking Horse Agent, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New

York 10019, Attn: Scott K. Charles and Neil M. Snyder, and any other person entitled to receive

notice pursuant to the Stalking Horse Agency Agreement; (e) counsel to the unsecured creditors'

committee, Frost Brown Todd LLC, 301 East Fourth Street, Cincinnati, Ohio 45202, Attn:

Ronald E. Gold and Douglas L. Lutz, and Koley Jessen P.C., L.L.O., One Pacific Place, 1125

South 103rd Street, Suite 800, Omaha, Nebraska 68124, Attn:  Brian J. Koenig; and (f) the U.S.

Trustee.

14.     In addition, within 24 hours after the entry of this Bidding Procedures Order or as

soon as reasonably practicable thereafter, the Debtors shall serve the Transaction Notice by

overnight mail or, for those parties who have consented to receive notice by the ECF system, by

ECF, upon (a) all federal, state, and local regulatory or taxing authorities or recording offices

which have a reasonably known interest in the relief granted herein; (b) the SEC; (c) the Internal

Revenue Service; (d) all parties entitled to notice pursuant to Local Rule 2002-1(B); (e) all

known creditors of the Debtors, including their contract counterparties; (f) the Office of the State

Attorney General for each state where the Debtors maintain a store or distribution center; and

(g) all registered holders of equity securities in the Debtors.

15.     Service of the Transaction Notice as described above shall be sufficient and

proper notice of the Transaction with respect to known interested parties.

B.      *Notice of Successful Bidder.*

16.     As soon as reasonably practicable after the conclusion of the Auction, the Debtors

shall file on the docket, but not serve, a notice identifying the Successful Bidder (the "Post-

Auction Notice"). The form of the Post-Auction Notice, substantially in the form attached to the Motion as **Exhibit E** is approved.

## V.       Assumption and Assignment Procedures

17.     The Assumption and Assignment Procedures, as detailed in the Motion, as modified by this Bidding Procedures Order, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are approved and shall govern the assumption and assignment of all Designated Contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to a Stalking Horse Agent (or other Successful Bidder following the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code and in accordance with the Stalking Horse Agency Agreement. The Notice of Assumption and Assignment, substantially in the form attached hereto as **Schedule 2** is approved.

A.      *Notice of Assumption and Assignment.*

18.     Within one business day of the entry of this Bidding Procedures Order (such date, the "Assumption and Assignment Service Date"), the Debtors shall file with the Court, and post on the following website http://dm.epiq11.com/Gordmans (the "Case Website"), a notice of assumption and assignment, substantially in the form attached hereto as **Schedule 2** (the "Notice of Assumption and Assignment") and, included therewith, a list (the "Designated Contracts List") that specifies:  (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Transaction, including the name of the non-Debtor counterparty to such contract, whether or not the underlying agreement would be considered an executory contract or unexpired lease under applicable nonbankruptcy law (the "Designated Contracts"); and (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the Designated Contract (the "Cure Costs"). The Debtors shall serve, via overnight mail, a customized version of the Notice of Assumption and Assignment, without the

14

Designated Contracts List, which will include:  (a) instructions regarding how to view that list on

the Case Website (the "DCL Instructions"); (b) information necessary and appropriate to provide

notice of the relevant proposed assumption and assignment of Designated Contracts and rights

thereunder; (c) Cure Costs, if any; and (d) the procedures for objecting thereto ((b)–(d)

collectively, the "Necessary Notice Information") on all Designated Contract Counterparties.

The Debtors shall serve on the Rule 2002 Notice List, via overnight mail, a modified version of

the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary

Notice Information.  Service as set forth herein shall be deemed proper, due, timely, good, and

sufficient notice and no other or further notice is necessary.

19.     A counterparty to a Designated Contract (hereinafter referred to as "Designated

Contract Counterparty") listed on the Notice of Assumption and Assignment may file an

objection (a "Designated Contract Objection") only if such objection is to the proposed

assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if

any.  All Designated Contract Objections must (a) state, with specificity, the legal and factual

basis for the objection as well as what Cure Costs are required, if any, (b) include appropriate

documentation in support thereof (it being understood that such appropriate documentation may

include an account statement, ledger, or other reasonably detailed documentation but need not

include a formal declaration or affidavit), and (c)(i) with respect to any Designated Contract

Objection objecting to the proposed Cure Costs for any Designated Contract, be filed and served

on the Objection Recipients no later than March 28, 2017 at 11:59 p.m. (prevailing Central

Time) (the "Cure Objection Deadline") or (ii) with respect to any Designated Contract Objection

objecting to assumption and assignment of any Designated Contract on grounds other than the

proposed Cure Costs, be filed and served on the Objection Recipients no later than April 4, 2017 at 4:00 p.m. (prevailing Central Time) (the "Assumption and Assignment Objection Deadline").

20.     If a Designated Contract Counterparty files a Designated Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Transaction Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Transaction Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

*B.*     *Supplemental Notice of Assumption and Assignment.*

21.     Although the Debtors intend to make a good-faith effort to identify all Designated Contracts that may be assumed and assigned in connection with the Transaction, the Debtors may discover certain executory contracts or unexpired leases inadvertently omitted from the Designated Contracts list or the Successful Bidder may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Transaction. Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse Agency Agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time after the Assumption and Assignment Service Date, before or after the closing of the Transaction, to: (a) supplement the list of Designated Contracts on the Notice of Assumption and Assignment with previously omitted Designated Contracts; (b) remove a Designated Contract from the list of executory contracts and unexpired leases ultimately selected as a Designated Contract that the Successful Bidder proposes be assumed and assigned to it in connection with the Transaction or add to such list; and/or (c) modify the previously stated Cure Cost associated with any Designated Contract.

22.     In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly serve a supplemental notice of assumption and assignment by electronic transmission, hand delivery, or overnight mail on the Designated Contract Counterparty, and its attorney, if known, to each impacted Designated Contract at the last known address available to the Debtors (a "Supplemental Notice of Assumption and Assignment").  Each Supplemental Notice of Assumption and Assignment will include the same information with respect to listed Designated Contracts as was included in the Notice of Assumption and Assignment.

23.     Any Designated Contract Counterparty listed on a Supplemental Notice of Assumption and Assignment may file an objection (a "Supplemental Designated Contract Objection") only if such objection is to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any.   All Supplemental Designated Contract Objections must:  (a) state, with specificity, the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (b) include appropriate documentation in support of the objection; and (c) be filed and served on the Objection Recipients no later than fourteen days from the date of service of such Supplemental Notice of Assumption and Assignment, which date will be set forth in the Supplemental Notice of Assumption and Assignment.

24.     If a Designated Contract Counterparty files a Supplemental Designated Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek an expedited hearing before the Court (a "Supplemental Designated Contract Hearing") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated Contracts.  If there is no such objection, then the Debtors will obtain an order of this Court, including by filing a certification of no objection,

(a "Supplemental Designated Contract Order") fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

> ### C.    *Additional Notice of Assumption and Assignment Procedures.*

25.    If the Designated Contract Counterparty does not file and serve a Designated Contract Objection or Supplemental Designated Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court in connection with such objection establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Designated Contract or any other document, and (b) the Designated Contract Counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Designated Contract against the Debtors or the Successful Bidder, or the property of any of them.

26.    Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Transaction Hearing or Supplemental Designated Contract Hearing, as applicable, and will be resolved at the hearing at which it is raised or, in the Debtors' discretion, adjourned to a later hearing.

27.    The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not:  (a) obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder to take assignment of such Designated Contract; or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an executory contract.  Only those Designated Contracts that are included on a schedule of assumed and acquired contracts attached to the final

agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

## VI.    Transaction Hearing.

28.    A Transaction Hearing to (a) approve the Transaction regarding certain of the assets to the Successful Bidder and (b) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at 1:00 p.m. (prevailing Central Time), which may be adjourned or rescheduled without notice, on:  (a) March 30, 2017, if the prevailing bid either provides for all or substantially all of the Debtors' assets, or a component of a prevailing joint bid that provides for the liquidation of some of the Debtors' assets; or (b) April 5, 2017, if the prevailing bid either provides for the sale of all or substantially all of the Debtors' assets in a going-concern transaction, or a component of a prevailing joint bid provides for the sale of some of the Debtors' assets in a going-concern transaction.  At the Transaction Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid.  The Transaction Hearing shall be an evidentiary hearing on matters relating to the Transaction and there will be no further bidding at the Transaction Hearing.  In the event that the Successful Bidder cannot or refuses to consummate the Transaction, the Debtors may, in accordance with the Bidding Procedures, and after consultation with the Consultation Parties, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall request approval of, and authority to consummate, the Backup Bid from the Court on an expedited basis, as soon as reasonably practicable in accordance with the Bankruptcy Court's calendar.

29.    Any and all objections, if any, to the Transaction (a "Transaction Objection"), must be filed by: (a) March 30, 2017 at 1:00 p.m. (prevailing Central Time), if the prevailing bid either provides for all or substantially all of the Debtors' assets, or a component of a prevailing

joint bid that provides for the liquidation of some of the Debtors' assets; or (b) April 4, 2017 at 4:00 p.m. (prevailing Central Time), if the prevailing bid either provides for the sale of all or substantially all of the Debtors' assets in a going-concern transaction, or a component of a prevailing joint bid provides for the sale of some of the Debtors' assets in a going-concern transaction (as applicable, the "Transaction Objection Deadline").  Any Transaction Objection must be served on: (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 Attn:  Brad Weiland and Jamie R. Netznik; (b) co-counsel for the Debtors, Kutak Rock LLP, 1650 Farnam Street, Omaha, Nebraska 68102, Attn:  Jeffrey T. Wegner and Lisa M. Peters; (c) counsel to the administrative agent, Riemer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036, Attn:  Steven Fox and Donald E. Rothman; (d) co-counsel to the administrative agent, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf, and Croker Huck Kasher DeWitt Anderson & Gonderinger, L.L.C., 2120 South 72nd Street, Suite 1200, Omaha, Nebraska 68124, Attn: Robert Gonderinger; (e) counsel to the Stalking Horse Agent, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Scott K. Charles and Neil M. Snyder; (f) counsel to the Successful Bidder, if known on the Transaction Objection Deadline; (g) the U.S. Trustee, 111 South 18th Plaza, Suite 1148, Omaha, Nebraska 68102, Attn:  Jerry L. Jensen; (h) counsel to the unsecured creditors' committee, Frost Brown Todd LLC, 301 East Fourth Street, Cincinnati, Ohio 45202, Attn:  Ronald E. Gold  and Douglas L. Lutz, and Koley Jessen P.C., L.L.O., One Pacific Place, 1125 South 103rd Street, Suite 800, Omaha, Nebraska 68124, Attn:  Brian J. Koenig; and (i) all parties that have requested notice in these chapter 11 cases (collectively (a)–(i), the "Objection Recipients").  Any party failing to timely file a Transaction Objection will be forever barred from objecting and will be deemed to have consented to the

Transaction, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Transaction.

30.     All replies to any Transaction Objection must be filed by:  (a) March 30, 2017 at 1:00 p.m. (prevailing Central Time), if the prevailing bid either provides for all or substantially all of the Debtors' assets, or a component of a prevailing joint bid that provides for the liquidation of some of the Debtors' assets; or (b) April 5, 2017 at 1:00 p.m. (prevailing Central Time), if the prevailing bid either provides for the sale of all or substantially all of the Debtors' assets in a going-concern transaction, or a component of a prevailing joint bid provides for the sale of some of the Debtors' assets in a going-concern transaction (as applicable, the "Reply Deadline").

## VII.    Miscellaneous.

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

32.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

33.     To the extent this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Bidding Procedures Order shall govern.

34.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

35.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

36.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse Agency Agreement, and the implementation of this Bidding Procedures Order.

Dated:  March 22, 2017
Omaha, Nebraska

/s/Thomas L. Saladino
UNITED STATES BANKRUPTCY JUDGE

## **Schedule 1**

## **Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GORDMANS STORES, INC., *et al.*,[1] | ) | Case No. 17-80304 (TLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## BIDDING PROCEDURES FOR
## THE DISPOSITION OF THE DEBTORS' ASSETS

On March 21, 2017, the United States Bankruptcy Court for the District of Nebraska (the "Court") entered the *Order (I) Establishing Bidding Procedures and Granting Related Relief and (II) Approving the Bid Protections Related to the Disposition of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale, liquidation, or other disposition (the "Transaction") of all or substantially all of the Debtors' assets (collectively, the "Assets"), in accordance with and as described in that certain agreement (the "Stalking Horse Agency Agreement"), dated as of March 13, 2017, by and among the Debtors and a joint venture by and between Great American Group, LLC and Tiger Capital Group, LLC (the "Stalking Horse Agent").

1.      **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each the following persons unless otherwise provided (collectively, the "Notice Parties"):

a.      **Debtors**. Gordmans Stores, Inc., 1926 South 67th Street, Omaha, Nebraska 68106, Attn: Andy Hall (andy.hall@gordmans.com) and James Brown (james.brown@gordmans.com).

b.      **Debtors' Co-Counsel**. Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Brad Weiland (brad.weiland@kirkland.com) and Jamie R. Netznik (jamie.netznik@kirkland.com); and Kutak Rock LLP, 1650 Farnam

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Gordmans Stores, Inc. (1987); Gordmans, Inc. (1211); Gordmans Management Company, Inc. (5281); Gordmans Distribution Company, Inc. (5421); Gordmans Intermediate Holdings Corp. (9938); and Gordmans LLC (1987). The location of the debtors' service address is: 1926 South 67th Street, Omaha, Nebraska, 68106.

[2]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

Street, Omaha, Nebraska 68102, Attn: Jeffrey T. Wegner and Lisa M. Peters, (jeffrey.wegner@kutakrock.com), (lisa.peters@kutakrock.com).

c.   **Debtors' Financial Advisor**.  Duff & Phelps Securities, LLC, 55 East 52nd Street, 31st Floor, New York, New York 10055, Attn: Joshua Benn and Edward Mielke, (joshua.benn@duffandphelps.com), (ed.mielke@duffandphelps.com).

d.   **Stalking Horse Agent's Counsel**.  Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Scott K. Charles and Neil M. Snyder, (skcharles@wlrk.com), (nmsnyder@wlrk.com).

e.   **Administrative Agent's Co-Counsel**.  (i) Riemer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven Fox (SFox@riemerlaw.com) and Donald E. Rothman (Drothman@riemerlaw.com), (ii) Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, Massachusetts 02110, Attn: Jeffrey M. Wolf (wolfje@gtlaw.com), and (iii) Croker Huck Kasher DeWitt Anderson & Gonderinger, L.L.C., 2120 South 72nd Street, Suite 1200, Omaha, Nebraska 68124, Attn:  Robert Gonderinger (rgonderinger@crokerlaw.com).

f.   **Counsel to the Official Committee of Unsecured Creditors**. (i) Frost Brown Todd LLC, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45206, Attn: Ronald E. Gold, Esq (rgold@fbtlaw.com), Douglas L. Lutz, Esq. (dlutz@fbtlaw.com), A.J. Webb, Esq. (awebb@fbtlaw.com); and (ii) Koley Jessen P.C., L.L.O., 1125 S. 103rd St., Suite 800, Omaha, Nebraska 68124, Attn: Brian J. Koenig, Esq (brian.koenig@koleyjessen.com) and Don L. Swanson, Esq. (don.swanson@koleyjessen.com).

g.   **Financial Advisors to the Official Committee of Unsecured Creditors**. Province, Inc., 2360 Corporate Circle, Suite 330, Henderson, Nevada 89074, Attn: Paul Huygens (phuygens@provincefirm.com).

2.   **Potential Bidders.**

The Debtors and their financial advisors have identified parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a competing transaction.  To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Transaction (each, a "Potential Bidder") must deliver or have previously delivered, if determined to be necessary by the Debtors[3] following consultation with the Consultation Parties:

a.   an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed;

---

[3]   All determinations and decisions to be made by the Debtors, including those in consultation with the Consultation Parties, shall be made in the Debtors' reasonable business judgment.

b.      the most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, and (ii) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Transaction); and

c.      adequate assurance of future performance for the Debtors' executory contracts and unexpired leases, including: (i) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (ii) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projection for the executory contract or unexpired lease subject to the assignment request, and any financial projections, calculations and/or proformas prepared in contemplation of purchasing the executory contracts or unexpired leases; and (iii) a contact person for the proposed assignee that the affected counterparty may directly contact in connection with the adequate assurance of future performance. In connection with an unexpired lease, the Potential Bidder shall also deliver: (i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store; (ii) the potential assignee's intended use for the space; and (iii) all documents and other evidence of the potential assignee's retail experience and experience operating in-line stores in a shopping center (collectively, the "<u>Adequate Assurance Documents</u>").  The Adequate Assurance Documents will be delivered by email or made available electronically to the Debtors' landlords on March 28, 2017.

**3.     Qualified Bidders.**

a.      A "<u>Qualified Bidder</u>" is a Potential Bidder: (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Transaction; (ii) whose Bid (as defined below) is a Qualified Bid (as defined below); and (iii) who the Debtors, after consulting with the Consultation Parties, determine should be considered a Qualified Bidder. On the Auction date, the Debtors' advisors will notify each Potential Bidder whether such Potential Bidder is a Qualified Bidder, and shall provide a copy of each Qualified Bid to the Stalking Horse Agent, and Comenity Bank.  The Stalking Horse Agent shall be deemed a Qualified Bidder at all times and the Stalking Horse Agent's Bid shall be deemed a Qualified Bid at all times.

b.      For the avoidance of doubt, two or more Potential Bidders may submit a Bid for the purchase, liquidation, or other disposition of any or all of the Assets, provided that such Bid(s), when taken as a whole, are determined by the Debtors, following consultation with the Consultation Parties, in accordance with Section 3(a) of

3

these Bidding Procedures, to constitute a Qualified Bid.[4]  Any such aggregation of two or more Bids shall be considered a "Joint Bid" for purposes of these Bidding Procedures.[5]

 c. If any Potential Bidder is determined by the Debtors, following consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three business days after the Bid Deadline.

 d. The Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Except as otherwise set forth in the Stalking Horse Agency Agreement, without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures, unless otherwise agreed to by the Debtors and the Consultation Parties (and, to the extent affecting any Stalking Horse Consent Items, with the consent of the Stalking Horse Agent) and announced at the Auction.

 e. Any disputes related to these Bidding Procedures, including whether a Bid (including a Joint Bid) constitutes a Qualified Bid, shall be resolved by the Court.

## 4. Due Diligence.

 a. **Diligence Provided to Potential Bidders**.

Only Potential Bidders approved by the Debtors (in consultation with the Consultation Parties) shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement**.[6]  The Debtors will provide to each approved Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence

---

[4] As such, for a Joint Bid to be deemed a Qualified Bid, such aggregated Bids must comply with the Bid Requirements (as defined and set forth below), including collectively exceeding the Minimum Bid (as defined below).

[5] References to a "Qualified Bidder" in these Bidding Procedures includes "Qualified Bidders," to the extent any Potential Bidders submit a Joint Bid that qualifies as a Qualified Bid under the terms hereof.

[6] Any Potential Bidder requesting access to the Private Label Credit Card Program Agreement dated September 6, 2002 between Comenity Bank and Gordmans, Inc., as amended, shall first execute a confidentiality agreement reasonably acceptable to Comenity Bank.

provided to any Potential Bidder to the Debtors' electronic data room.  The due diligence period will end on the Bid Deadline.

The Debtors shall not furnish any confidential information relating to the Assets, the Debtors' liabilities, or the Transaction to any person, *except* to an approved Potential Bidder or to such Potential Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.  The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment after consultation with the Consultation Parties, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Transaction.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine, following consultation with the Consultation Parties, are sensitive or otherwise not appropriate for disclosure to a Potential Bidder.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors (following consultation with the Consultation Parties) as a Potential Bidder.

**All due diligence requests must be directed to Duff & Phelps Securities, LLC, 55 East 52nd Floor, New York, New York 10055, Attn: Joshua Benn and Edward Mielke, joshua.benn@duffandphelps.com and ed.mielke@duffandphelps.com.**

b.      **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Transaction.  Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, after consultation with the Consultation Parties, that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information:  (i) with the prior written consent of such bidder and the Debtors; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other

5

governmental order, or regulation, including, as appropriate, to regulatory agencies.

**5.      Bid Requirements.**

A proposal, solicitation, or offer (each, a "<u>Bid</u>") by a Qualified Bidder that is submitted in writing and satisfies the following requirements (collectively, the "<u>Bid Requirements</u>"), as determined by the Debtors, in consultation with the Consultation Parties, in their reasonable business judgment, shall constitute a "<u>Qualified Bid</u>."   For the avoidance of doubt, regardless of whether it satisfies the following requirements, the Stalking Horse Agency Agreement will be deemed a Qualified Bid for all purposes.

a.      **Assets**.  Each Bid[7] must provide for the purchase, liquidation, or other disposition of all or substantially all of the Assets and must clearly state which assets of the Debtors that the Qualified Bidder(s) are agreeing to purchase, liquidate, or otherwise dispose of and which liabilities of the Debtors that the Qualified Bidder(s) are agreeing to assume.

b.      **Deposit**.  With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in an amount such that such Potential Bidder's deposit (or, if such Potential Bidder forms part of a Joint Bid, the aggregate deposit of such Joint Bid) is equal to at least $7 million, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "<u>Deposit</u>").

c.      **Same or Better Terms**.   Each Bid must be on terms that are not more burdensome or conditional than the terms of the Stalking Horse Agency Agreement, as determined by the Debtors in consultation with the Consultation parties.   Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Transaction and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the Stalking Horse Agency Agreement clearly marked to show all changes requested by the Potential Bidder (unless the Bid is for a going concern transaction), including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "<u>Qualified Bid Documents</u>").

d.      **Contingencies; No Financing or Diligence Outs**.   A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' business judgment, and after consultation with the Consultation Parties, than those set forth in the Stalking Horse Agency Agreement.

---

[7]    For the avoidance of doubt, a Joint Bid shall be deemed a "Bid" for purposes of the Bid Requirements.

KE 45963752.20

e.   **Identity**.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Transaction), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.

f.   **Demonstrated Financial Capacity**.  A Qualified Bidder must have, in the Debtors' business judgment, and after consultation with the Consultation Parties, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

g.   **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale, liquidation, or other disposition set forth in its Bid with cash on hand, each Bid must include unconditional committed financing documented to the satisfaction of the Debtors, and after consultation with the Consultation Parties, that demonstrates that the Potential Bidder has:   (i) received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties.

h.   **Binding and Irrevocable**.  A Qualified Bid must be irrevocable unless and until the Debtors accept a prevailing Bid and such Qualified Bidder is not selected as the Backup Bidder.

i.   **Expenses; Disclaimer of Fees**.  Each Bid (other than the Stalking Horse Agency Agreement) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Agent) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

j.   **Authorization**.  Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, after consultation with the

Consultation Parties) with respect to the submission of its Bid and the consummation of the Transaction.

k.    **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Potential Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

l.    **Adherence to Bid Procedures**.  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

m.    **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval to consummate the Transaction and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following the conclusion of the Auction, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

n.    **Consent to Jurisdiction**.  Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Transaction documents, and the Closing, as applicable.

o.    **Bid Deadline**.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 4:00 p.m. (prevailing Central Time) on March 28, 2017 (the "Bid Deadline") by the Notice Parties.

p.    **Minimum Amount**.  To the extent any Bid (including, for the avoidance of doubt, any Joint Bid) provides for the sale, liquidation, or other disposition (other than as a going concern) of all or substantially all of the Debtors' inventory, such Bid shall provide for total consideration to the Debtors with a value that exceeds the sum (the "Minimum Amount") of (i) the value of the Stalking Horse Agent's Bid, (ii) $1.4 million in cash and (iii) the value of the Bid Protections.

To the extent any Bid provides for a going concern sale of at least 35 stores, the Minimum Amount shall not apply, and such Bid need not provide for any minimum amount of consideration to be a Qualified Bid (*provided* such Bid otherwise meets the requirements to be a Qualified Bid).

q.   **No Break-Up Fee**.  Each Bid must not request or entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment of any kind payable by any person or entity or any substantial contribution claim ("Additional Bid Protections").

## 6.   Right to Credit Bid.

At the Auction, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid all or a portion of the value of its secured claim to the extent such secured claim is not disputed.

Credit bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Agent's entitlement to the Bid Protections granted under the Bidding Procedures Order; and for the avoidance of doubt, any such credit bid shall be required to provide for payment in cash of the Bid Protections.

## 7.   Auction.

If the Debtors receive a Qualified Bid, other than the Stalking Horse Agency Agreement, the Debtors will conduct an Auction to determine the Successful Bidder.  If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Agency Agreement), the Debtors will not conduct an Auction and shall designate the Stalking Horse Agent's Bid as the Successful Bid.

No later than the start of the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' reasonable business judgment, and after consultation with the Consultation Parties (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the Baseline Bid to each Qualified Bidder.  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors, after consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the applicable Stalking Horse Agency Agreement, if any, requested by the Qualified Bidder, including the type and amount of Assets sought and obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (e) the tax consequences of such Qualified Bid; (f) whether a Qualified Bid constitutes a going concern sale; (g) whether a Qualified Bid contemplates the assumption and assignment of the Debtors' unexpired leases; (h) the net effect of a Qualified Bid on the Debtors' unexpired leases; and (i) the effect of the Qualified Bid on the employees of the Debtors (collectively, the "Bid Assessment Criteria").

9

The Auction shall take place at 10:00 a.m. (prevailing Central Time) on March 29, 2017, at the offices of Kutak Rock LLP, 1650 Farnam Street, Omaha, Nebraska 68102 (or at any other location as the Debtors may hereafter designate on proper notice), or such later date and time as selected by the Debtors.  The Auction shall be conducted in a timely fashion according to the following procedures:

a.   **The Debtors Shall Conduct the Auction**.

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, the Debtors and their legal and financial advisors, the Consultation Parties, members of the Official Committee of Unsecured Creditors, and the Debtors' landlords shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders shall be entitled to bid at the Auction.

b.   **Terms of Overbids**.

"Overbid" means any bid made at the Auction by a Qualified Bidder[8] subsequent to the Debtors' announcement of the Baseline Bid.  Each Overbid must comply with the following conditions:

(i)   **Minimum Overbid Increment**.  The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than $250,000.00 (or the equivalent percentage of the Retail Price of the Merchandise) (a "Minimum Overbid Increment").

Additional consideration in excess of the amount set forth in the respective Baseline Bid may include: (1) cash and/or noncash consideration; *provided* that the value for such noncash consideration shall be determined by the Debtors, after consultation with the Consultation Parties; and (2) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such secured creditor's allowed secured claim.

(ii)   **Conclusion of Each Overbid Round**.  Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, and after consultation with

---

8    Or Qualified Bidders, in the event of a Joint Bid.

the Consultation Parties, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii)    **Overbid Alterations**.  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, and after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures, as may be amended during the Auction by the Debtors in consultation with the Consultation Parties (and, to the extent affecting the Stalking Horse Consent Items, with the consent of the Stalking Horse Agent), and must qualify as a Qualified Bid.

(iv)    **Announcing Highest Bid**.  Subsequent to each Overbid Round Deadline, the Debtors, after consultation with the Consultation Parties, shall announce whether the Debtors have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Initial Minimum Overbid for such asset package, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for a given asset package (for each asset package, the "Prevailing Highest Bid").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors, in consultation with the Consultation Parties, as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid.

c.    **Consideration of Overbids**.

The Debtors reserve the right, in their reasonable business judgment, and after consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things:   (i) facilitate discussions between the Debtors, the Consultation Parties, and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, and after consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

d.    **Closing the Auction**.

(i)    The Auction shall continue until there is only one Bid or Joint Bid, as applicable, that the Debtors determine, in their reasonable business judgment, and after consultation with the Consultation Parties, to be the highest or otherwise best Bid.  Such Bid or Joint Bid, as applicable, shall be declared the "Successful Bid," and such Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) the "Successful Bidder," at which point the Auction will be closed.  The Auction shall not close unless and

11

until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)     For the avoidance of doubt, but without limiting the Bid Protections or the provisions of any Stalking Horse Agency Agreement, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law, after consulting with the Consultation Parties.

(iii)    The Debtors may not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely.

(iv)     As soon as reasonably practicable after closing the Auction, the Debtors shall cause to be filed with the Court: (A) notice of the results of the Auction; and (B) the Qualified Bid Documents for the Successful Bid and Backup Bid.

e.     **No Collusion; Good-Faith Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Transaction if selected as the Successful Bidder.

8.     **Backup Bidder.**

a.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder (other than the Stalking Horse Agent) with the next-highest or otherwise second-best Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, and after consultation with the Consultation Parties (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder"), and each Qualified Bidder (other than the Stalking Horse Agent) shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b.     The identity of the Backup Bidder and the amount and material terms of the backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Transaction with the Successful Bidder; provided that nothing shall diminish the rights of the Stalking Horse Agent under the Stalking Horse Agency Agreement. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder.

12

c.    If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may, after consultation with the Consultation Parties, select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes, and the Debtors shall request approval of, and authority to consummate, the Backup Bid from the Court on an expedited basis, as soon as reasonably practicable in accordance with the Court's calendar.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors.  The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## 9.    Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, and after consultation with the Consultation Parties and the Stalking Horse Agent, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale, liquidation, or other disposition of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Transaction Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.  Notwithstanding anything to the contrary herein or otherwise, the Debtors shall not, without the consent of the Stalking Horse Agent, waive (i) the requirement that each Qualified Bid include a Deposit in the amount specified herein, (ii) the requirement that each Qualified Bid to liquidate all or substantially all of the Debtors' inventory provide total consideration with a value in excess of the Minimum Amount, (iii) the requirement that no Qualified Bid include Additional Bid Protections, (iv) the requirement that any credit bid by Secured Creditors include a cash component sufficient to pay the Bid Protections, (v) the treatment of the Stalking Horse Agent as a Qualified Bid and the Stalking Horse Agent's Bid as a Qualified Bid and (vi) the exclusion of the Stalking Horse Agent from the requirement to serve as a Backup Bidder (collectively, together with the matters addressed in the next sentence, the "Stalking Horse Consent Items"). For the avoidance of doubt, notwithstanding anything to the contrary herein or otherwise, the Debtors shall not be permitted to make any change of any kind to the terms of Section 11 hereof without the express written consent of the Stalking Horse Agent.

## 10.    Transaction Hearing.

A hearing to consider approval of each Transaction with the Successful Bidder (or to approve the Stalking Horse Agency Agreement, as applicable, if no Auction is held) (the "Transaction Hearing") is currently scheduled to take place before the Honorable Judge Thomas L. Saladino, at the Court, 111 S. 18th Plaza, 2nd Floor, Courtroom No. 8, Omaha, Nebraska 68102, at 1:00 p.m. (prevailing Central Time) on:  (a) March 30, 2017, if the prevailing bid either provides for all or substantially all of the Debtors' assets, or a component of a prevailing joint bid that provides for the liquidation of some of the Debtors' assets; or (b) April 5, 2017, if the prevailing bid either provides for the sale of all or substantially all of the

13

Debtors' assets in a going-concern transaction, or a component of a prevailing joint bid provides for the sale of some of the Debtors' assets in a going-concern transaction.

**The Transaction Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Transaction Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Agent).**

At the Transaction Hearing, the Debtors shall present the Successful Bid to the Court for approval.

## 11.   Bid Protections.

To provide an incentive and to compensate the Stalking Horse Agent for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Agency Agreement with the knowledge and risk that arises from participating in the disposition and subsequent bidding process, the Debtors have, after consultation with the administrative agent, agreed to pay the Stalking Horse Agent, under the conditions and in the amount set forth in the Bidding Procedures Order:

a.     a break-up fee in the amount of $1,125,000.00 (the "Breakup Fee"); and

b.     an expense reimbursement equal to the reasonable and documented third party costs, fees and expenses incurred by the Stalking Horse Agent (including, without limitation, (x) the reasonable costs and expenses of acquiring signage and other advertising and promotional materials in connection with the Sale (as defined in the Stalking Horse Agency Agreement) (the "Signage Costs"), (y) the documented, out-of-pocket or committed costs and expenses incurred by the Stalking Horse Agent in acquiring Additional Agent Merchandise (as defined in the Stalking Horse Agency Agreement) in connection with the Sale pursuant to non-cancellable orders and otherwise in accordance with the terms of this Section 11 (the "Additional Agent Merchandise Costs") and (z) the reasonable and documented out-of-pocket fees and expenses of legal, accounting and financial advisors) in connection with the Stalking Horse Agency Agreement (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections"); *provided*, *however*, that in no event shall the amount of the Expense Reimbursement exceed $250,000.00 plus an amount not to exceed $450,000.00 for Signage Costs plus an amount not to exceed $5,000,000.00 for Additional Agent Merchandise Costs;

each payable pursuant to the terms of the Stalking Horse Agency Agreement in the event that the Stalking Horse Agency Agreement is terminated pursuant to certain provisions of the Stalking Horse Agency Agreement, including without limitation due to the Debtors entering into an agreement providing for an alternative transaction. Subject to the payment of the Bid Protections in accordance with the Stalking Horse Agency Agreement, the Stalking Horse Agent will deliver all signage and other advertising and promotional material subject to reimbursement for Signage

14

Costs and all Additional Agent Merchandise subject to reimbursement for Additional Agent Merchandise Costs to an alternative Successful Bidder.

The Bid Protections will be an allowed administrative expense priority claim, senior to all other administrative expense priority claims, and will be secured by a legal, valid and binding first-priority lien on certain assets and property of the Debtors, in each case in accordance with and subject to the limitations provided by the terms of the Stalking Horse Agency Agreement.

For purposes of the Bid Procedures, the costs of Additional Agent Merchandise subject to the Expense Reimbursement shall be in an amount not to exceed $5,000,000.00 and all such Additional Agent Merchandise shall be reasonably consistent with the merchandise mix and quality of the Debtors' merchandise as set forth on the Debtors' merchandise report dated as of March 1, 2017. The Stalking Horse Agent covenants and agrees that it shall first attempt to purchase the Additional Agent Merchandise which is subject to the Expense Reimbursement from the Debtors' existing vendors and only if the existing vendors are unwilling or unable to satisfy the orders for such Additional Agent Merchandise at a price reasonably acceptable to the Stalking Horse Agent and with reasonable terms of delivery, then the Stalking Horse Agent shall be permitted to enter into agreements to buy Additional Agent Merchandise from parties other than the Debtors' existing vendors. Provided, however, that the Stalking Horse Agent further covenants that it shall not purchase Additional Agent Merchandise that is subject to the Expense Reimbursement from any affiliate(s) of the Stalking Horse Agent or from any other industry liquidation party. The Stalking Horse shall provide to the Consultation Parties on March 24, 2017 and March 27, 2017 a copy of all records evidencing the consummated purchase of, or the binding commitment to purchase, Additional Agent Merchandise extant as of such date (the "Additional Agent Merchandise Information"). Upon request, the Debtors will provide the Additional Agent Merchandise Information no later than March 27, 2017 to any other party in interest who may be submitting a Bid pursuant to the terms of the Bid Procedures. Provided, however, that the Stalking Horse Agent shall not be prejudiced by the failure of the Debtors to comply with the terms of this paragraph. The Stalking Horse Agent agrees that it is not entitled to an Expense Reimbursement for any Additional Agent Merchandise that is not included in the Additional Agent Merchandise Information delivered by the Stalking Horse Agent to the Consultation Parties in accordance with the terms of this paragraph.

Notwithstanding anything to the contrary set forth herein or in the Stalking Horse Agency Agreement, in the event that the Stalking Horse Agent participates in a Joint Bid that is the Successful Bid, the Stalking Horse Agent shall be entitled to receive the Expense Reimbursement in accordance with the terms set forth herein (provided that under such circumstances (i) the Stalking Horse Agent shall not receive any reimbursement for Additional Agent Merchandise Costs and (ii) the cap on the reimbursement of Signage Costs shall be reduced ratably based on the number of the Debtors' stores that the Stalking Horse Agent liquidates). Under such circumstances (i.e., if the Stalking Horse Agent participates in a Joint Bid that is the Successful Bid), the Stalking Horse Agent shall not be entitled to receive the Breakup Fee.

The Stalking Horse Agent shall have standing to appear and be heard on all issues related to the Auction, the Transaction, and related matters, including the right to object to the

15

purchase, liquidation, or other disposition of the Assets or any portion thereof (including the conduct of the Auction and interpretation of these Bidding Procedures).

## 12.    Return of Deposit.

The Deposit of the Successful Bidder shall be applied to the Purchase Price of the transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five business days after the Auction.

If the Successful Bidder fails to consummate the Transaction because of a breach by the Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the Transaction with the Backup Bidder without the need for an additional hearing or order of the Court.

## 13.    Consultation Parties.

The term "Consultation Parties" as used in these Bidding Procedures shall mean, with respect to any Asset: (a) counsel and financial advisor to the official committee appointed in these cases (the "Committee"); (b) counsel to Wells Fargo Bank, N.A., as "Revolver Agent"; and (c) counsel to Wells Fargo Bank, N.A., as "Term Agent."   In the event that any Consultation Party, any member of the Committee or affiliate of any of the foregoing participates as a potential purchaser in the sales process under these Bidding Procedures, any obligation of the Debtors to consult with such bidding party pursuant to these Bidding Procedures will be suspended without further action until such party advises the Debtors and the other Consultation Parties that they have irrevocably withdrawn as a potential bidder in the sale process, at which time such party's consultation privileges will be reinstated. If a member of the Committee submits a Qualifying Bid, such Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Committee shall exclude such member form any discussions of deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

## 14.    Fiduciary Out.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; provided that in the event of any such action, all rights and remedies of the Stalking Horse Agent in these Bidding Procedures or the Stalking Horse Agency Agreement shall be preserved.

*[Remainder of page intentionally left blank]*

16

Omaha, Nebraska
Dated:  March 22, 2017

_/s/ Lisa M. Peters_

Lisa M. Peters (Nebraska Bar No. 24546)
Jeffrey T. Wegner (Nebraska Bar No. 18265)
**KUTAK ROCK LLP**
The Omaha Building
1650 Farnam Street
Omaha, Nebraska 68102
Telephone:    (402) 346-6000
Facsimile:    (402) 346-1148

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice*)
Brad Weiland (*pro hac vice*)
Jamie R. Netznik (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## Schedule 2

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GORDMANS STORES, INC., *et al.*,[1] | ) | Case No. 17-80304 (TLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF POTENTIAL ASSUMPTION
## AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES IN CONNECTION WITH THE DISPOSITION OF
## CERTAIN OF THE DEBTORS' ASSETS AND THE PROPOSED CURE COSTS

**YOU ARE RECEIVING THIS NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE DISPOSITION OF THE DEBTORS' ASSETS AND THE PROPOSED CURE COSTS (THE "<u>NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT</u>") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH GORDMANS STORES, INC. OR ONE OR MORE OF ITS AFFILIATED DEBTORS (COLLECTIVELY, THE "<u>DEBTORS</u>"). PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

**PLEASE TAKE NOTICE** that on March 13, 2017, the above-captioned debtors and debtors in possession (the "<u>Debtors</u>")[2] filed the *Debtors' Motion to (I) Establish Bidding Procedures and (II) Approve the Bid Protections Related to the Disposition of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* [Docket No. 24] (the "<u>Transaction Motion</u>") with the United States Bankruptcy Court for the District of Nebraska (the "<u>Bankruptcy Court</u>") seeking, among other things, entry of an order (the "<u>Transaction Order</u>"):  (a) approving the proposed bidding procedures attached as **Schedule 1** to the Bidding Procedures Order (the "<u>Bidding Procedures</u>") by which the Debtors will solicit and select the highest or otherwise best offer for the sale, liquidation, or other disposition (the "<u>Transaction</u>") of all or substantially all of their assets (the "<u>Assets</u>"); (b) approving the notice attached to the Transaction Motion as **Exhibit B** for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "<u>Assumption and Assignment</u>

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Gordmans Stores, Inc. (1987); Gordmans, Inc. (1211); Gordmans Management Company, Inc. (5281); Gordmans Distribution Company, Inc. (5421); Gordmans Intermediate Holdings Corp. (9938); and Gordmans LLC (1987).  The location of the debtors' service address is:  1926 South 67th Street, Omaha, Nebraska 68106.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Transaction Motion.

Procedures"); (c) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto; (d) approving the Debtors' selection of the Stalking Horse Agent, the Bid Protections (defined below) for the Stalking Horse Agent, and the Stalking Horse Agency Agreement; (e) scheduling a final hearing (the "Transaction Hearing") to approve the Transaction; (f) approving the request of the Debtors to shorten the notice period to five calendar days and set an expedited hearing date for March 17, 2017 at 4:00 p.m., or as soon thereafter as possible, to hear and consider the Bidding Procedures Order; and (g) granting related relief, and upon the Debtors' further request that, at the Transaction Hearing, the court (x) authorize the sale, liquidation, or other disposition of all or substantially all of the Debtors' Assets free and clear of liens, claims, interests, and encumbrances (collectively, the "Interests") with any such Interests to attach to the proceeds thereof with the same validity and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the Transaction, (y) authorize the assumption and assignment of certain executory contracts and unexpired leases, and (z) grant related relief.

**PLEASE TAKE FURTHER NOTICE** that on March 21, 2017, the Court entered an order (the "Bidding Procedures Order") granting certain of the relief sought in the Transaction Motion, including, among other things, approving:  (a) the Bidding Procedures for the sale, liquidation, or other disposition of the Assets; and (b) the Assumption and Assignment Procedures.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Assumption and Assignment Procedures and by this written notice, the Debtors hereby notify you that the Designated Contracts and any modifications thereto set forth on **Schedule 1** attached hereto (collectively, the "Designated Contracts") may be assumed and assigned to the Successful Bidder, subject to the Successful Bidder's payment of the cure amounts set forth on **Schedule 1**, or such other cure amounts that are agreed to by the parties.

**PLEASE TAKE FURTHER NOTICE** that, the Successful Bidder has the right under certain circumstances to designate additional Designated Contracts or remove Designated Contracts from the list of executory contracts and unexpired leases to be assumed and assigned pursuant to a Transaction (as defined in the definitive documentation providing for such Transaction).

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order and the Bidding Procedures and any other related documents are available:  (a) upon request to Epiq Bankruptcy Solutions, LLC (the notice and claims agent retained in these chapter 11 cases) by calling  **(646) 282-2400**; (b) by visiting the website maintained in these chapter 11 cases at **http://dm.epiq11.com/Gordmans**;  or  (c) for  a  fee  via  PACER  by  visiting http://www.neb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that any objections with respect to the proposed Cure Costs for any Designated Contract must be filed and served on the Objection Recipients no later than **March 28, 2017 at 11:59 p.m. (prevailing Central Time)**.

**PLEASE TAKE FURTHER NOTICE** that any objections to assumption and assignment of any Designated Contract on grounds other than the proposed Cure Costs must be

filed and served on the Objection Recipients no later than **April 4, 2017 at 4:00 p.m. (prevailing Central Time)**.

     **PLEASE TAKE FURTHER NOTICE** that the "Objection Recipients" are the following parties:  (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 Attn:  Brad Weiland and Jamie R. Netznik;  (b) co-counsel for the Debtors, Kutak Rock LLP, 1650 Farnam Street, Omaha, Nebraska 68102, Attn:  Jeffrey T. Wegner and Lisa M. Peters;  (c) counsel to the administrative agent, Riemer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036, Attn:  Steven Fox and Donald E. Rothman; (d) co-counsel to the administrative agent, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf, and Croker Huck Kasher DeWitt Anderson & Gonderinger, L.L.C., 2120 South 72nd Street, Suite 1200, Omaha, Nebraska 68124, Attn:  Robert Gonderinger; (e) counsel to the Stalking Horse Agent, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn:  Scott K. Charles and Neil M. Snyder; (f) counsel to the Successful Bidder, if known on the Transaction Objection Deadline; (g) the U.S. Trustee, 111 South 18th Plaza, Suite 1148, Omaha, Nebraska 68102, Attn:  Jerry L. Jensen; (h) counsel to the unsecured creditors' committee, Frost Brown Todd LLC, 301 East Fourth Street, Cincinnati, Ohio 45202, Attn:  Ronald E. Gold  and Douglas L. Lutz, and Koley Jessen P.C., L.L.O., One Pacific Place, 1125 South 103rd Street, Suite 800, Omaha, Nebraska 68124, Attn:  Brian J. Koenig; and (i) all parties that have requested notice in these chapter 11 cases.

Omaha, Nebraska
Dated:  March 22, 2017

/s/ Lisa M. Peters
_____
Lisa M. Peters (Nebraska Bar No. 24546)
Jeffrey T. Wegner (Nebraska Bar No. 18265)
**KUTAK ROCK LLP**
The Omaha Building
1650 Farnam Street
Omaha, Nebraska 68102
Telephone:    (402) 346-6000
Facsimile:    (402) 346-1148

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice*)
Brad Weiland (*pro hac vice*)
Jamie R. Netznik (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## **Schedule 1**
## **to Assumption and Assignment Notice**

### **Contracts and Leases**

**Contracts and Leases**[1]

| Debtor | Counterparty | Description of Acquired Contracts or Leases | Cure Amount |
|---|---|---|---|
|  |  |  |  |

---

[1] The presence of a contract or lease on this **Schedule 1 to Assumption and Assignment Notice** does not constitute an admission by the Debtors that such contract is an executory contract or such lease is an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtors reserve all rights to withdraw any proposed assumption and assignment, or to reject any contract or lease at any time before such contract or lease is assumed and assigned pursuant to an order of the Court.