**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GORDMANS STORES, INC., *et al.*,[1] | ) ) | Case No. 17-80304 (TLS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' MOTION FOR APPROVAL TO EXTEND
THE TIME WITHIN WHICH THE DEBTORS MUST ASSUME OR
REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

G-Estate Liquidation Stores, Inc., formerly known as Gordmans Stores, Inc., and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion:

**Relief Requested**

1. The Debtors seek approval to extend by 90 days (*i.e.*, through Monday, October 9, 2017) the time period within which the Debtors must assume or reject the Debtors' unexpired leases of nonresidential real property (collectively, the "Unexpired Leases").

2. Additionally, the Debtors respectfully request leave to submit a proposed order for the Court's consideration, as to grant the relief requested herein.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: G-Estate Liquidation Stores, Inc., formerly known as Gordmans Stores, Inc. (1987); G-Estate Liquidation, Inc., formerly known as Gordmans, Inc. (1211); G-Estate Liquidation Management Company, Inc., formerly known as Gordmans Management Company, Inc. (5281); G-Estate Liquidation Distribution Company, Inc., formerly known as Gordmans Distribution Company, Inc. (5421); G-Estate Liquidation Intermediate Holding Corp., formerly known as Gordmans Intermediate Holdings Corp. (9938); and G-Estate Liquidation, LLC, formerly known as Gordmans LLC (1987). The location of the debtors' service address is: 1926 South 67th Street, Omaha, Nebraska 68106.

4848-5544-6857. 1

**Jurisdiction and Venue**

3.  The United States Bankruptcy Court for the District of Nebraska has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The basis for the relief requested herein is section 365(d)(4) of the Bankruptcy Code.

**Background**

6.  The Debtors are collectively a retail company that was engaged in the sale of apparel, home goods, and other merchandise at over 100 stores in 22 states throughout the United States and through e-commerce operations. The Debtors are headquartered in Omaha, Nebraska.

7.  On March 13, 2017 (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 20]. On March 15, 2017, the United States Trustee for the District of Nebraska (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 64]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

**The Debtors' Chapter 11 Cases and Assessment of the Unexpired Leases**

I.   **The Unexpired Leases.**

8.   The Unexpired Leases consist of, among other agreements, the Debtors' retail store lease agreements in various states and office lease agreements for their corporate headquarters and other office space in Omaha, Nebraska. The Debtors' initial 120-day period to assume or reject the Unexpired Leases expires on July 11, 2017, pursuant to section 365(d)(4)(A)(i) of the Bankruptcy Code. The Debtors' Unexpired Lease are valuable assets to the Debtors' estates.

II.  **The Necessity of the Requested Extension.**

9.   An extension of the period during which the Debtors may assume or reject the Unexpired Leases is necessary and warranted under the facts and circumstances of these chapter 11 cases. The Debtors have utilized the initial period to, among other things, conduct stalking horse, bidding, auction, and sale processes (as more particularly described below), obtain Court approval of important operational programs, prepare and file schedules of assets and liabilities and statements of financial affairs for all Debtors, and develop a wind-down plan and strategy. The Debtors have engaged in discussions with their key constituents, including the Committee and the U.S. Trustee. These discussions, in turn, cleared the way for entry of all of the Debtors' first-day and second-day orders on a near fully-consensual basis. The Debtors have discussed the relief sought in this motion with the Committee and understand that the Committee does not oppose such relief.

III. **The Sale.**

10.  On April 6, 2017, the Court entered its *Order Pursuant to Sections 105(A), 363, 365 and 554 of the Bankruptcy Code (I) Approving the Debtors' Entry Into Agency Agreement and Asset Purchase Agreement, (II) Authorizing the Debtor to Sell Certain Merchandise*

3

*Through Liquidation Sales, (III) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, and (V) Granting Related Relief* [Docket No. 330] (the "Sale Order") approving, *inter alia*, the sale of substantially all of the Debtors' assets (the "Sale") through (a) liquidation sales (the "GOB Sales") conducted by a joint venture comprised of Tiger Capital Group, LLC and Great American Group WF, LLC (together, the "JV Agent") at 48 of the Debtors' retail locations (collectively, the "GOB Locations"), the Debtors' distribution center located in Clayton, Indiana ("DC2"), and the Debtors' corporate headquarters (the "Headquarters"), and (b) a going concern sale transaction with Specialty Retailers, Inc. (the "Purchaser"), pursuant to an Asset Purchase Agreement dated as of March 31, 2017 (the "Asset Purchase Agreement") among the Purchaser, as purchaser, and the Debtors, as sellers, whereby the Purchaser would acquire, among other property, (i) designation rights to the leases at 57 of the Debtors' retail locations (collectively, the "Designation Locations"), the Debtors' distribution center in Omaha, Nebraska ("DC1"), and certain office space used by the Debtors for support functions (the "Office Location"), and (ii) the merchandise, inventory, furniture, fixtures, equipment and other personal property owned by the Debtors located at the foregoing stores and distribution center (the "Acquired Assets").

11. The Sale closed on April 7, 2017 and upon the closing thereof, the JV Agent commenced the GOB Sales at the affected locations and the Purchaser took over the operations at the Designation Locations and took title to the Acquired Assets.

12. The GOB Sales concluded at the GOB Locations on various dates, with the first GOB Sales concluding on April 30, 2017 and the last of the GOB Sales concluding on May 22, 2017. The GOB Sale at DC2 concluded on May 31, 2017. The leases for each of the GOB Locations and DC2 have all been rejected pursuant to various notices filed with Court and the

4

related orders entered by the Court approving such lease rejections. *See* Docket Nos. 416, 419, 431, 439, 446, 462, 484, 485, 486, 498, 500. The Debtors have vacated and surrendered the premises for each of the GOB Locations and DC2 to the respective landlords.

13. Pursuant to the Asset Purchase Agreement, the Purchaser was obligated to designate the leases at least 50 of the 57 Designation Locations for assumption and assignment by the Debtors to the Purchaser by delivering a notice of such designation (each, a "Purchaser Designation Notice") to the Debtors no later than May 31, 2017. With respect to any remaining Designation Locations, DC1, and the Office Location, the Asset Purchase Agreement allows the Purchaser until July 31, 2017 to deliver a Purchaser Designation Notice to the Debtors designating the leases for such locations to either be assumed and assigned by the Debtors to the Purchaser or rejected by the Debtors.

14. Between the closing of the Sale and May 31, 2017, the Purchaser delivered a series of Purchaser Designation Notices to the Debtors that, in the aggregate, designated the leases at 53 of the Designation Locations and DC1 for assumption and assignment by the Debtors to the Purchaser. As required by the Asset Purchase Agreement, upon receipt of the Purchaser Designation Notices, the Debtors then filed notices of such lease assignments and assumptions with the Court. *See* Docket Nos. 354, 355, 363, 407, 423, 444, 468, 502, 539, and 541. The Court has entered orders approving the assignment and assumption of the foregoing leases. *See* Docket Nos. 370, 397, 409, 425, 450, 474, 512, 534, 623, and 625.

15. The Purchaser has also delivered a Purchaser Designation Notice to the Debtors that designated the leases at two of the Designation Locations to be rejected by the Debtors. As required by the Asset Purchase Agreement, upon receipt of such Purchaser Designation Notice,

5

the Debtors then filed a notice of the related lease rejections with the Court. *See* Docket No. 622. The proposed rejections under such notice are currently pending before the Court.

16. The Purchaser has not yet delivered any Purchaser Designation Notice to the Debtors designating the leases for the remaining two Designation Locations or the Office Location to be assumed and assigned by the Debtors to the Purchaser or rejected by the Debtors. As noted above, the Purchaser has until July 31, 2017 to notify the Debtors of the Purchaser's designation decision with respect to the foregoing leases.

17. The Asset Purchase Agreement also requires the Debtors to provide certain transition and central services to the Purchaser until July 31, 2017 to assist the Purchaser in integrating the Acquired Assets and operations at the retail locations into the Purchaser's system and overall operations. As part of the foregoing obligations, the Debtors must continue to occupy the Headquarters until July 31, 2017. As of the date hereof, the Debtors are continuing to occupy both the Headquarters and the Office Location and provide the required transition and central services to the Purchaser, and have not rejected the leases for the Headquarters or the Office Location.

18. Because the Debtors are still actively occupying and using the Headquarters, as required by the Asset Purchase Agreement, the GOB Sale at the Headquarters has not yet commenced and is expected to occur during the month of July 2017 and conclude on or before July 31, 2017.

19. The Debtors are current on their postpetition obligations under the leases for the remaining two Designation Locations, the Headquarters, and the Office Location. The Debtors intend to continue to stay current on all such postpetition obligations until the respective leases are either rejected by the Debtors or assumed and assigned by the Debtors to the Purchaser.

**IV.    The Requested Extension.**

20.    Section 365(d)(4)(A)(i) of the Bankruptcy Code provides for the automatic rejection of the Unexpired Leases on July 11, 2017 if the Debtors do not assume such leases sooner.  11 U.S.C. § 365(d)(4)(A)(i).  However, the Asset Purchase Agreement, approved by the Court through the Sale Order, gives the Purchaser until July 31, 2017, beyond the July 11, 2017 deadline prescribed by the Bankruptcy Code, to make assumption and assignment decisions with regard to certain of the Unexpired Leases.  Additionally, in light of the many matters that the Debtors are managing in these chapter 11 cases, the Debtors require additional time to decide whether to assume or reject their Unexpired Leases.  Accordingly, the Debtors seek a 90-day extension of the period under section 365(d)(4)(A)(i) of the Bankruptcy Code (*i.e.*, through Monday, October 9, 2017) to continue to evaluate the Unexpired Leases.  The Debtors submit that all parties will be best served by an extension, which will avoid needless distraction, ensure the Debtors can continue to perform their obligations under the Asset Purchase Agreement, and provide the appropriate environment for the major stakeholders in these chapter 11 cases to work collaboratively regarding the Unexpired Leases (and otherwise).  Therefore, cause exists to extend the section 365(d)(4) deadline (subject to any further consensual extensions negotiated with any applicable lease counterparties).

## Basis for Relief

21.    Section 365(d)(4)(A) of the Bankruptcy Code provides, in relevant part, as follows:

> (A)    Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of —

7

4848-5544-6857. 1

        (i)       the date that is 120 days after the date of the order for relief; or

        (ii)      the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A). The primary purpose of section 365(d)(4) is to protect lessors from delay and uncertainty by requiring a debtor to decide quickly whether to assume an unexpired lease. *See, e.g.*, *In re Gateway Apparel, Inc.*, 210 B.R. 567, 571 (Bankr. E.D. Mo. 1997).

    22.    Section 365(d)(4)(B)(i) of the Bankruptcy Code authorizes a court to grant an extension of time to assume or reject unexpired leases of nonresidential real property for "cause." *See* 11 U.S.C. § 365(d)(4)(B)(i). Courts consider various factors in determining whether such "cause" exists, including, but not limited to:

    a.    whether the lease is the debtor's primary asset;

    b.    whether the debtor has had sufficient time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan of reorganization;

    c.    whether the lessor continues to receive rent for the use of the property;

    d.    whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

    e.    whether the case is exceptionally complex and involves a large number of leases;

    f.    whether the debtor has failed or is unable to formulate a plan when it has had sufficient time to do so; and

    g.    any other factors bearing on whether the debtor has had a reasonable amount of time in which to decide whether to assume or reject the lease.

*See, e.g.*, *Gateway Apparel*, 210 B.R. at 571 (citing *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 298 (Bankr. S.D.N.Y. 1996); *Escondido Mission Vill., L.P. v. Best Prods Co., Inc.*, 137 B.R. 114, 116 (S.D.N.Y. 1992)); *In re Am. Healthcare Mgmt., Inc.*, 900 F.2d 827, 833 (5th Cir. 1990) (recognizing that a court may extend the deadline under section 365(d)(4) if "there is 'cause' for granting the extension"); *see also S. St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys,*

*Inc.)*, 94 F.3d 755, 760–61 (2d Cir. 1996) (listing factors that demonstrate cause for an extension).

23. The foregoing factors weigh heavily in favor of granting the requested extension, and cause exists to extend the time within which the Debtors may assume or reject the Unexpired Leases.

24. ***First***, although the Debtors do not have a large number of Unexpired Leases remaining (as the Debtors have previously assumed and assigned or rejected, each as the case may be, 103 of the non-residential real property leases to which the Debtors were a party to on the Petition Date), such Unexpired Leases are important assets of the Debtors' estates. For example, two-thirds of the Unexpired Leases are for Designation Locations that the Purchaser has the right to designate for assumption and assignment by the Debtors to the Purchaser until July 31, 2017. Further, the remaining Unexpired Leases are for the Headquarters, which the Debtors are required to continue to occupy until July 31, 2017, and the Office Location, which the Debtors use to, *inter alia*, provide the transition and central support services required under the Asset Purchase Agreement to the Purchaser.

25. ***Second***, although the Debtors have already spent a significant amount of time appraising their financial situation and the potential value of the Unexpired Leases to a third party, an appraisal of and negotiations regarding the Debtors' financial situation and potential value of the Unexpired Leases will require more time. Even if the Purchaser does not designate any of the remaining Unexpired Leases for assumption and assignment, the Debtors may seek out other third parties that may have an interest in acquiring the Debtors' rights under the Unexpired Leases. The assumption and assignment of the Unexpired Leases would unquestionably maximize value to the Debtors' estates by eliminating potentially substantial

9

lease rejection damage claims. Further, the current statutory deadline to assume or reject the Unexpired Leases is several weeks before the Purchaser's designation rights period ends with respect to such Unexpired Leases. Compelling the Debtors to determine which Unexpired Leases to prematurely assume or reject could otherwise also have a substantial negative impact on the Debtors' ability to maximize value by causing a default in respect of the Debtors' obligations under the Asset Purchase Agreement. Accordingly, to allow the Debtors to evaluate their financial situation and determine whether assumption or rejection of the Unexpired Leases is in the best interest of the Debtors' estates, the Debtors submit that it is appropriate for the Court to extend the section 365(d)(4) deadline as set forth herein.

26. **_Third_**, these chapter 11 cases are complex. Beyond the complexities of operating their businesses, conducting the sale process, and complying with their post-sale obligations, the Debtors, among other things, continue to face the challenges of winding down their business operations. Considering the multitude of tasks the Debtors have been and will be required to complete to address and evaluate all potential alternatives, extending the section 365(d)(4) deadline by 90 days is appropriate.

27. **_Fourth_**, the Debtors have not had a reasonable time to assume or reject the Unexpired Leases because of the obligations imposed on the Debtors under the Asset Purchase Agreement, including those with regard to the Headquarters and the Purchaser's right to designate certain of the Unexpired Leases for assumption and assignment by the Debtors. Through the Sale Order, the Court already approved the Asset Purchase Agreement, which makes it impossible for the Debtors to make an assumption or rejection decision with respect to certain of the Unexpired Leases by the deadline under section 365(d)(4)(A)(i) of the Bankruptcy Code. Moreover, parties in interest, including lessors under the Unexpired Leases, were on

10

notice of the Sale Order and Asset Purchase Agreement and the timelines contemplated thereunder.

28. In addition, the lessors under the Unexpired Leases will not be prejudiced by the extension of time requested by the Debtors because, among other reasons: (a) the Debtors have performed and intend to continue to perform in a timely manner their undisputed postpetition obligations for so long as the Debtors maintain the Unexpired Leases; (b) the Debtors' continued occupation of the leased premises is not at all likely to damage the facilities or harm the lessors; and (c) any lessor may at its discretion request that the Court fix an earlier date by which the Debtors must assume or reject its lease in accordance with section 365(d)(4) of the Bankruptcy Code, to the extent required by the circumstances. Thus, the relief requested herein will not harm lessors but will merely preserve the *status quo* while the Debtors analyze the remaining Unexpired Leases and decide whether to assume or reject them. *See, e.g.*, *In re Am. Healthcare Mgmt., Inc.*, 900 F.2d at 832 ("[A]n order extending the time for a debtor to assume or reject a lease merely preserves the status quo.").

29. Accordingly, the proposed extension of the section 365(d)(4) deadline through and including the additional 90 days provided by section 365(d)(4) of the Bankruptcy Code is necessary, appropriate, and in the best interests of the Debtors' estates and should be granted. Furthermore, courts have routinely granted similar relief in other chapter 11 cases in this district and others. *See, e.g.*, *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (BSS) (Bank. E.D. Mo. July 18, 2016) (extending the deadline by which the debtors must assume or reject unexpired leases of nonresidential real property by 90 days); *In re Gander Mountain Co.*, No. 17-30673 (MER) (Bankr. Minn. Apr. 6, 2017) (same); *In re Arch Coal, Inc.*, No. 16-40120-705 (CER)

(Bankr. E.D. Mo. July 5, 2016) (same); and *In re hhgregg, Inc.*, No. 17-01302-11 (RLM) (Bankr. S.D. Ind. Mar. 17, 2017) (same).[2]

### Notice

30.    The Debtors will provide notice of this motion to the following parties or their respective counsel, if known: (a) the Office of the United States Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the state attorneys general for states in which the Debtors conduct business; (d) the Nebraska Department of Revenue; (e) the Office of the United States Attorney for the District of Nebraska; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) co-counsel to the administrative agent, (i) Riemer Braunstein LLP, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven Fox and Donald E. Rothman, (ii) Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, Massachusetts 02110, Attn: Jeffrey M. Wolf, and (iii) Croker Huck Kasher DeWitt Anderson & Gonderinger, L.L.C., 2120 South 72nd Street, Suite 1200, Omaha, Nebraska 68124, Attn: Robert Gonderinger; (i) counsel to the JV Agent, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Scott K. Charles and Neil M. Snyder; (j) co-counsel to the Purchaser, (i) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019, Attn: Paul H. Zumbro and Matthew T. Kelly, and (ii) McGrath North Mullin & Kratz, PC LLO, First National Tower, Suite 3700, 1601 Dodge Street, Omaha, Nebraska 68102, Attn: Douglas E. Quinn; (k) lessors under the Unexpired Leases; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. A copy of this motion is

---

[2]    Because of the voluminous nature of the orders cited herein, they are not attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

12

4848-5544-6857. 1

also available on the website of the Debtors' notice and claims agent at http://dm.epiq11.com/Gordmans.

## No Prior Request

31. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

4848-5544-6857.1

WHEREFORE, the Debtors respectfully request: (1) that the Court enter an order approving the relief sought herein; and (2) leave to submit a proposed order for the Court's consideration granting such relief.

| | |
|---|---|
| Omaha, Nebraska<br>Dated: June 14, 2017 | /s/ *Lisa M. Peters*<br>Lisa M. Peters (Nebraska Bar No. 24546)<br>Jeffrey T. Wegner (Nebraska Bar No. 18265)<br>**KUTAK ROCK LLP**<br>The Omaha Building<br>1650 Farnam Street<br>Omaha, Nebraska 68102<br>Telephone:  (402) 346-6000<br>Facsimile:  (402) 346-1148 |

-and-

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
Jamie R. Netznik (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*